Please all rise. Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Christopher M. Kennedy presiding. Thank you. Please be seated. Your Honor, the first case we'll adopt this morning is 2-7-23-0238. K Stones, Inc., plaintiff's counsel, v. Prudhume, Polk Coast, v. H. J. Chen, N. Q. Newman, Vestal Wireless, Suburban Meals, Inc., and John Doe's 1-2-5, defendants, William Polk and Mr. Chen, defendants' appellants. Arguing on behalf of the attorney, Mr. John Lee. Arguing on behalf of the appellees, Mr. Samuel Sheehan. All right, Mr. Lee, as soon as you're ready, you may proceed. Please feel free to adjust the microphone if needed. Same goes for counsel. Thank you, Your Honor. Good morning. May it please the Court, counsel, my name is John Lee, and I represent the appellant, K Stones, Inc., in this matter. This is a, this, I will start with the one and only issue that is on appeal in this matter, which is the JNOV that was entered against a jury verdict. It was entered on one count, two counts, but one claim, which is the unjust enrichment claim. Standard of review is de novo, of course. The JNOV standard to take a case away from the province of the jury is obviously extremely high. The cases that we cite talk in terms of total lack of evidence to prove the elements of unjust enrichment in this case. Or, all evidence is so overwhelmingly favors the JNOV that no contrary verdict based on evidence can stand. The opposite of that statement is, if there is any evidence, some evidence, including reasonable inferences, jury verdict cannot be disturbed. I submit to you, Your Honor, here, not only was there some evidence, it's the only evidence that was submitted. The only evidence that was submitted as to Ms. Chang's ownership of the home in her own name was her own testimony that her husband paid for it in cash, $659,000, and she has no idea where he got the money from. It is also uncontroverted. He made $32,000 a year. And then, of course, I will get into the forensic evidence later on, but that really gets into the conversion count, which shouldn't be before the court. Nobody ever appealed from the conversion count judgment. What quantified gain was there? I'm sorry. The gain of the house, the cars, the house? Was there any evidence that there was more gain, like the house was worth more than what they purchased it for? Or, you know, what was the unjust enrichment? You're just saying her gaining that based upon her husband's conversion? Sure. And that jumps into the second issue of does the conversion, the judgment on the conversion count, somehow exclude the judgment on the unjust enrichment count? That's a good question. Does it? It does not. It cannot. Now, there are cases. Here's why. There are cases, for example, where you have a contract claim and an unjust enrichment claim, and they're mutually exclusive. You may plead both as an alternative to pleading, but you can't collect both. You either collect on the breach of contract or you collect on the unjust enrichment. Here, you have a conversion count and an unjust enrichment count. The conversion count is against only the husband who stole the money, which means if you can't plead and collect on the unjust enrichment count, what the law would actually encourage is fraudulent conveyances because all that anybody would have to do is steal the money, give it to somebody else, and that somebody else didn't steal the money. But how do you – aren't you looking for something akin to a double recovery? No. The unjust enrichment count, and that is exactly what – we're jumping ahead, but that's okay. That's exactly what the child judge stated. The child judge had two cases where she said this is a double recovery. That's sheer speculation. I submit to you that's sheer speculation for this reason. If you take the judgment on the conversion count and add the judgments on the unjust enrichment counts, it comes out to a little more than the evidence that was submitted by Fred Cruz that he stole at least $1.3 million. Don't you have to prove that? I mean, he wasn't able to prove that. The jury came up with, what was it, 660 or something? Correct? 660 on the conversion count and 430 on the unjust enrichment count against both Chang and Koh. Koh, remember, there wasn't merely the house. There was the house. There were the cars. There was the businesses. There was the living expenses. Those were all, and if you add those up, as one of the courts stated, it's the Nichols case. That's the one where the jury comes up with a jury verdict of 3.1 million when his claim was for 2.2 million or the evidence was submitted for 2. I on purpose cited three cases, one of which was a case that had the damages of pain and suffering and emotional damages, both. And the argument was made in that case. Isn't that double recovery? Isn't that duplicative? And the appellate court there, that's up there with the first district, not the second district, but the appellate court said, no, it's not. The appellees did not submit any special interrogatories on the damages. With respect, and then I submitted two cases, Nichols v. Agnew, and Ticola, Chimes. One is where the jury comes up with an amount that's less than suggested by either the plaintiff or the defendant. And one is an amount that's far in excess of any number that they suggested. Let's go to the one that's in excess of. That's the Nichols v. Agnew case again. What the court says is, is that number against the manifest weight of the evidence? And if there's no evidence that that's against the manifest weight of the evidence, you cannot, a jury might, a judge might calculate it differently. Even this court might calculate it differently. Simply cannot invade the province of the jury. And that court goes on to say, maybe the jury counted interest. Maybe the jury counted, looked at the documents, the voluminous documents that were part of the evidence, and did their own calculation that's a side and a part or in addition to what the expert calculated. The point being, all those maybes are sheer conjecture. We could sit here and do maybe they counted this, maybe this counted this, maybe they added this, maybe they deducted this. Appellate courts are pretty clear. Whether the amount that the jury comes up with is more than what the attorneys argued or what the experts presented, or less than. If it is not against the manifest weight of the evidence, and there's no indication here that it's against the manifest weight of the evidence, the evidence that was submitted is the actual POS data. If it wasn't clear in the record, POS data is the point of sale thing where they scan. So for each cashier, every single transaction, every sale, every return, those are recorded and then it goes into the database. And in this case, it went into a database for six, seven years. Right, there's no question about the conversion. The data. Yeah, there's no question about that. My issue, I think, is what the trial court's issue was, where is there evidence that he generated more money from what he converted? Is that required for unjust enrichment? No, it is not. Why not? It is not. In other words, if somebody takes a steal of the money, and then he takes that money and generates more money, that's the only way you can get unjust. The unjust enrichment is the actual value, retained value. In fact, the Supreme Court makes it pretty clear. The two elements are HPI health care. That's the Illinois Supreme Court case. And did Ms. Chang retain the benefits? Yes, of course she did. She got a house. She drove the cars. She fed the kids, clothed the kids, lived there. And yet somehow the jury came up with, although, you know, as I understand the record, they could easily, by your theory, they could easily have given the whole, what was the amount of the verdict, 660? That's the conversion. The conversion verdict. That doesn't include the punitive damages and the interest.  They could easily, by your theory, have given that to her. Sure. I'm not saying. They did. How they calculated. They came up with this other number. Sure. You need to be able to peg it to something. Sure. And the trial court noted that there was no other evidence of an increase in value. And there's no. I get that. Okay. So we discussed the double recovery theory or that if you have a conversion count, you can't have an unjust enrichment count. There's two notes. Neither the trial judge nor the appellee takes a single case for that proposition. I don't think that's correct. I think what the court was saying, you can have a conversion count, but if you have an unjust enrichment count, just as the jury instruction says, you have to show, you have to compensate the plaintiff by the sum of money that reflects defendant's gain derived from the conversion. That's what it says. So it's not saying you can't have conversion and unjust enrichment. It's saying you can have both, but any unjust enrichment, you must show what gains were derived from the conversion. The house, the cars, the living expenses. The notion that if the house doesn't appreciate in value. That's what the notion is, right? Right. There's not a single case. The trial court doesn't cite a single case. Appellee doesn't cite a single case. And I can't find any case that discusses or even hints at that proposition. And here's why I believe why. Number one, you can't or the court can't, the law can't encourage fraudulent conveniences where somebody converts and all they have to do is give it to somebody else and say, now I'm judgmental. And that person has the assets. The cash or whatever was taken has the assets. And that person didn't increase the value. Therefore, that person is now immune from a claim. In my footnote in one of my briefs, it wasn't. I said, if a person takes stolen money, gives it to the wife, and the wife goes to the river casino. Under that theory, the only way you can recover from the wife is if she succeeds. If she loses money at the casino, you can't get any money back from her. The value that she got was the ability to gamble with somebody else's money at the casino. And... But how about the wife claiming she knew nothing about where the money came from? I say the judge puts forth two bases. One is what we just discussed as the double recovery, and then one is the discovery of the profits. That she knew nothing about the conversion is simply not an element. In fact, there are cases pretty much... That was argued going back to motion to dismiss 2-615 in this case, which was denied. And that very argument was made. And she actually, the judge, actually... I kind of call it a half argument, or I call it two and a half bases for her. One was the double recovery theory, and one was that she didn't make any profits. The other is, she didn't know. And I understand. Now, I have a hard time believing. Remember, reasonable inferences. This is a housewife whose husband makes $32,000 a year. Did she know he made $32,000 a year? Well, I don't know what's in the evidence as to what she knew. But I don't believe, for unjust enrichment purposes, her state of mind, what she knew and what she didn't know, and what she asked her husband and what she didn't ask her husband, is simply not an element. In fact, there's not a single case... Again, on the two and a half bases for the trial court's basis for overturning a jury verdict, that sat and watched every witness, and that sat and listened to the experts, and actually asked for the POS data, the actual data, to say that those two and a half bases is... She didn't know, or there's no evidence that she knew. I think there's plenty of evidence that she knew from a reasonable inference standpoint, and it's like almost any proof. I'm a housewife who makes $32,000 a year, and I just got a house in my name, paid for in cash, by my husband, and I had no idea where he got the money from. Now... So you're saying that her knowledge is something we could infer from the evidence?  But my point is, yes, you can, but it's not even necessary. It is simply unnecessary for the person who retained, the unjustly retained the benefits to have to know what wrongdoing was done to get that money over to her. Well, I think she'd be charged with unjust enrichment if she was clueless. I mean, if somebody came in and gave you $100,000, and says, here, I'm giving you this as a gift, say a family member gifted you $100,000, you had no idea where they got it, you were graciously accepting it, and then you're going to be charged with unjust enrichment? How could that be? And that's exactly what the Supreme Court deals with in HPI health care. It's not that she's being charged with anything. She's getting the benefit. So the question that the Illinois Supreme Court puts forth is, who has the better claim for that money? The person who had that whose money was stolen, or the person who, unbeknownst to her, she just received it. She got a gift. Wouldn't it be more just to say he should be the one with the claim of unjust enrichment, and not the wife? Would you disagree with that? I would, for the simple reason that actually promotes and encourages fraudulent advances. I see what you're saying. Thank you. It actually, if you go with this profit theory, it even encourages, I'm sorry, did the thing go off? You can conclude. Okay, you can finish your remarks. The other policy, I'm obviously in front of the appellate court, but the other policy, I don't think the law wants to be in a position where it says, if you take stolen money from other people, or ill-gotten money that you may not even know about it was ill-gotten, but you got it, in order for you to keep it, we want you to make bad investments, do reckless things. We don't want you to do things that actually, here we have an interesting situation of they bought both a car and a house. Generally, yeah, two cars. Generally, cars depreciating value. Generally, houses appreciating value. Not understanding what happened to all of us in 2008 and 2009. The law should not be in a position of encouraging any kind of a behavior, aside and apart from the ill-gotten nature of the gains, so that if the results of that investment is positive, you have to cough it up. But if you made a poor investment and bought a house that depreciates in value, you get to keep it. That's a very incongruous result. Okay. Thank you. Thank you, counsel. You'll have time in rebuttal. Mr. Shim, you may proceed when ready. Please feel free to adjust the microphone if necessary. May it please the Court. My name is Samuel Shim for Mr. Koh and his wife, Mrs. Chang. I will respond in kind to counsel's argument regarding the substantive merits of the unjust enrichment, but I think it's important to note that this Court needs to decide a three-step process on the threshold issue of the timeliness notice of appeal in this case. I'll get to that after my response to counsel's argument. As your Honor has noted, you have to have some quantifiable evidence in order for there to have been a just verdict for unjust enrichment. Let me go back. We'll talk about unjust enrichment. I understand your position based on your briefs. But how is the Court justified in taking this verdict from the jury? Because based on the evidence or the lack of evidence that was presented before the jury, no contrary verdict could stand in this case. And the Circuit Court properly recognized that at the close of plaintiff's case in this case, it should have granted the defendant's motion for a directed verdict. But the Court heard motions, pretrial motions with respect to this issue and let it go to the jury. So doesn't that tell you that the Court felt that this is something that the jury could hear? The Circuit Court, during the hearing or in her ruling on my motion for judgment in outstanding the verdict, said that it had made a mistake. And certainly the Circuit Court could correct that mistake, and it did so in this case by properly granting the motion for J&OB. As your Honor has noted, there was absolutely no evidence, and the plaintiff at least implicitly admits before this Court that there was no quantifiable evidence as to the unjust enrichment or the benefit that was retained by the defendants in this case. How about an unjust enrichment claim, as I asked Mr. Lee? How about an unjust enrichment claim against the husband? Wasn't that evident against the husband versus against the wife who may have been just a — I hate to say the word ignorant, but, you know, unknowing wife. Her husband comes home, he doesn't tell her how much he makes, doesn't tell her where he gets the money, and maybe she doesn't ask. I mean, why not against him? That falls within the purview of counsel's public policy argument. And I grant you, it's valid. But that's not the law with respect to unjust enrichment. There has to be a defendant's gain. And that's what the jury instruction said in this case. Bruce, what do you think that $434,000 was that the jury granted in their verdict? There was no basis for that verdict in this case. There was nothing other than the $660,000 verdict on the conversion count. But wouldn't that $434,000 add up to the million that was testified as to missing? We would never know that. But based on their arguments before this court, and if you look at their one page in their brief that describes the evidence of unjust enrichment, it's basically the argument that it was $666,000, notwithstanding what the experts said in this case, and the fact that they bought the house without financing and that they had the supposedly expensive cars that they drove. And his wife, Mrs. Chang, testified that they were used. More importantly, she testified that the husband dealt with all the finances for the family. She didn't know how much, and in response to your honor's question, she testified that she didn't know what he was making. She knew that he worked for Case Stone in some capacity, didn't know exactly what he did for them. So that's the testimony. And as we stated in our brief, they could have presented evidence as to the value of the home. We all know what it cost to buy it at that particular time. And that's what the circuit court pointed out, and she focused that there was no evidence as to the value in terms of the gain, the defendant's gain in that regard. Well, he said they gained the house and they gained two cars and they gained the businesses. That goes to the $660,000. Circuit court said that $660,000 covers that. The $660,000 against the husband, correct? Right, because there's no evidence as to conversion as to the wife. But that reflects the value of the house, right? Or the purchase price, true or false? $660,000, yes. Okay, and the home was put in her name. Would an unjust enrichment verdict of $660,000 against the wife then be supported by the evidence in your mind or no? No. Why not? Because she had the benefit of a house in her name in the amount of that purchase price. So that's the problem. Just getting a piece of property is not a benefit that could be characterized as unjust enrichment. Why not? Because she had nothing to do with it. No, she got the benefit of something under unjust circumstances and it's as a result of conversion. Yeah, but there's two criteria for an unjust enrichment, and it's both of them. She unjustly got something. She didn't work for it, didn't pay for, and its circumstances are unjust. So why, if the jury had come up with $660,000, I'm not sure I understand why that would have been improper. The verdict against him, allegedly, they found he stole $660,000. So that's fine on the conversion. As to the UE, she got the value, and I'm not sure it would be improper for a jury to decide, the value of the home is the amount they paid for it on the open market. If the jury had come back with $660,000 against the wife. So that would have been okay. On the adjustment. On the adjustment, it would have been okay. So you're now saying. Well, I don't know if it would have been okay. Supported by the evidence and defensible in the face of a JNOV. That's really what I mean. No, I think there still needs to be evidence that's quantifiable in addition to. That's conversion, isn't it? Quantifiable? No. Yeah, conversion is specific, identifiable. So we're not talking about that. We're talking about UE. So let's just isolate that and talk about that. So you're arguing there has to be a secondary benefit in addition to the converted. Correct. And that's what the circuit court said in this case. So what's the authority for that proposition? So let's take a hypothetical. Husband steals a painting, gives it to wife. Wife puts it in her own name. Husband no longer collectible. Is the owner of the painting unable to recover the painting? For conversion, yes. Not for unjust enrichment. Unless there is. The wife didn't convert it. The wife received it. She holds on to it. But does she have to gain a secondary benefit or is it possession of the painting? Right, because there's got to be evidence that, let's say she sells it at a later point and achieves some type of profit. That would be a retention of unjust benefit. Okay. And she holds on to it. And certainly the plaintiffs were not barred from presenting such evidence. And we cited cases where you could present evidence as to the value of a home, the stocks. Those things were not done. And those are part of the calculus for the circuit court in finding that there was absolutely no evidence to support the $434,000. Counsel's argument is, as I understand it, that, well, for one, simply having the benefit of the house, which presumably is what the cash went to, that has a value beyond the interest that was awarded under the conversion count. But also that you're encouraging, you know, anyone who converts an asset to convey it to someone else's name. And if it's invested poorly, the person who it was stolen from has no recourse. Well, that's true for any similar factual scenarios. I think that's inherent in that hypothetical. And as we pointed in our brief, there was absolutely no evidence that the wife knew of any of the transfers. So knowledge is an element of unjust enrichment. She needs to be complicit, conspiring. She needs to know. It's an element, right? Is that what you're telling us? I don't think there is a science requirement. You don't think there is what? Knowledge requirement. Right. So the jury verdict says that you... So the theory that somebody could steal something, give it to somebody they passed by on the street, if that person accepts it, is that an unjust enrichment or no? If there is a benefit that was gained and retained... Yeah, let's assume the thing, whatever it is, has a benefit. And they give it to somebody else. Could that person be implicated in an unjust enrichment case? Are they liable for unjust enrichment? Why not? Because they didn't know? No, because in order for that person to be liable for unjust enrichment, there has to be a quantifiable benefit that was retained. But we've got the thing. Let's assume we have expert testimony as to the value of the thing. That's no different than the house that was put in. So you're saying he has to sell it and there has to be money made on top of it? No. The plaintiff had to, and it was their burden to present evidence of the benefit. And the circuit court correctly said there's no increasing value of the house. There's no quantifiable evidence as to what if any benefit they got from driving those used cars or the household expenses, what had. So that's, and I think inherently the circuit court got it right because at the end of the day, yes, while you may justify the verdict as the conversion, notwithstanding what that expert said, apparently the jury rejected his opinion. But the fact that the jury rendered a verdict with respect to $434,000, there was absolutely no adventurous basis for it. And that is the issue for the plaintiff, and the circuit court got it right. Let me finish by saying the notice of appeal as to Mrs. Chang is untimely, and therefore this court should dismiss the appeal in this case. No matter how you look at it, whether you look at the plaintiff's contention that it was timely filed on November 14th of 2023, that's still late under the prevailing bankruptcy law or the Illinois state cases of Enray, Cook County, and GM for Dorchak because the circuit court's correcting of that date to November 14th when the record as it stands shows that it was accepted on November 27th to be deemed to have been filed on November 22nd. Even under for Dorchak, that was outside the 30-day limit because the circuit court did not have jurisdiction to make that correction. Notwithstanding the bankruptcy court's order that was entered on October 16th annulling the automatic state. Did the bankruptcy, did she discharge the bankruptcy or did she withdraw the bankruptcy? It was withdrawn or dismissed. So on the other hand, if you say that the notice of appeal was filed on July 14th of 2023, then under Enray, Cook County, it should have been, it's still invalid because it was filed in violation of automatic state. So either way you look at it, the notice of appeal as to Mrs. Chain is untimely and this court has to dismiss the appeal. Defendant or the plaintiff could have filed a motion with this court, not the circuit court, under Rule 303, asking Lee to file a late notice of appeal, but they didn't. So based on those reasons and the reasons stated in our brief, the defendants respectfully request this court to affirm the circuit court's grant of the judgment on JNLV and dismiss the appeal as to Mrs. Chain. Thank you. Thank you, counsel. Thank you, Your Honor. I must say I sat there in amazement and heard the argument that a house is not a benefit. A house is a benefit, a poor house is a benefit, a rich house is a benefit, a poor running car is a benefit, a wealthy, a brand new car is a benefit, a used car is a benefit. It's a benefit that she got with somebody else's money that was stolen by her husband. So their argument, again, as I understand it, is that that benefit is $660,000, which is recoverable under conversion, theoretically. It's also recoverable under unjust enrichment, and here's the reason why. Your Honor actually asked him, what's the case law? The case law says there isn't any. I believe they didn't cite any case law that says with respect to secondary benefit, what Judge Kennedy referred to as the secondary benefit. There's not a single case out there on unjust enrichment that says you need to look at your secondary benefit to see if there is any or if there isn't any, because if there isn't any, it's only covered by conversion, which goes right to my argument of, well, that actually encourages fraudulent advances. With respect to the calculation of $660,000, and I agree with counsel, Applebee's counsel, he said, and I quote him, you would never know that. Of course not. That's my point. It's conjecture. How the jury got to $660,000 and how the jury got to $434,000. $434,000 is less than $660,000, but let's assume hypothetically. You know how they got to the $660,000. There was testimony as to that, correct? There was testimony as to the amount of the money that was stolen. Right. How did that $660,000, I mean the money stolen, was like $1,000,000? $1.3 million at the high end, if you take into account interest and so on, it could be more than that. But you ask, what's the… But the $660,000, was that the purchase price of the house or no? I believe it was $659,000 or something like that. Yeah. Yeah. Now, but, and then, did she, did they, there's actually, there was testimony. She said something about, well, I inherited $150,000. If I have to come up with a theory, this is my theory, conjecture. Maybe the jury took $660,000 and took away or deducted what she claimed to be an inheritance of $150,000 or whatever. And then maybe that's how they got to the 433, 434 number. Again, my point is, all of that is conjecture. And the case law is pretty clear that we, counsel can, I can, this court can, the trial jury can, the trial judge can, do all kinds of slicing and dicing of numbers. But unless it's against the manifest weight of the evidence, a jury verdict, the jury who sliced the numbers, however they did it, cannot be disturbed. And it's not against the manifest weight of the evidence. That's my point. I'll shortly discuss this timeliness issue. Unless we ignore the supremacy clause of the U.S. Constitution, that's Article VI, Section 2, and the exclusive jurisdiction of the bankruptcy court, there's not one state in the union that has a bankruptcy court. It's a federal court. This is federal bankruptcy court. Unless we ignore 11 U.S.C. Section 362, the automatic stay statute, counsel argues that I should have filed a motion, a notice of motion. I couldn't. Number one, I would be in violation of the state statute. Number two, it's void ad initio. No one needs to file a motion. No one needs to make a decision on it. It's just void as a matter of law, ad initio. And that's the supreme law of the land. If I filed a motion for extension, court aptly filed a motion for additional citation of additional case, and then cited Mellon Bank versus Valiant-Velasich. All that case says is you could appeal to the, you could file a motion with the appellate court to say for good cause shown, you may file a notice, may I file a notice of appeal after that. Problem is, that too violates the statute, the state. The state, you cannot file a notice of motion. You cannot file a motion to reconsider. You cannot file a motion to extend. Anything that's, and that is because of the exclusive jurisdiction of the bankruptcy court. Anything that has to be filed. And the court asks, what happened to this? And counsel for appellate said Chang withdrew the bankruptcy, and therefore the case was dismissed. Look at the incumbency. Again, the observed result of like, for example, encouraging a fraudulent advance, or encouraging reckless behavior with the stolen money. That would mean a judgment debtor, as soon as a judgment is entered, runs to the bankruptcy court and files a petition. And that petition then stays everything. You cannot file a notice of pleading. You cannot file a post-judgment. It stays everything. And then four months later, five months later, withdraws the bankruptcy petition. It's dismissed. And in those four months, counsel says, if you didn't file a notice of appeal, and if you didn't file, make arguments, all of which would violate a federal statute. And all of which would be void ad initio as a matter of law. Both under state law and federal law. I cited two Seventh Circuit cases, and I also cited two Illinois court cases. They are concrete products. Basically, unless we ignore a federal statute that automatically stays all other proceedings that is not in bankruptcy court, the absurd encouragement of judgment debtors to run and file a bankruptcy matter, and then run out of time so that you can't file a notice of appeal, this is exactly the case. He says it's late no matter what because it was filed five months after the judgment. But what that ignores is when the JNOB was entered, the JNOB itself was void ad initio as a matter of law. Because it was entered during the stay. The only thing that could proceed has to proceed in bankruptcy court. I get it. You know, we were talking about these numbers, how the 434 brought you up to the million. But your expert, Krauss, said that based upon the normal returns, it was 845, 739 would be the loss. He didn't say the loss was a million. Actually, he calculated it up to 1.3 million. And then he took off. And then he took off. He said what he did was... To account for the normal returns. Sure. Now, again, we could sit here and say maybe the jury accepted that. Maybe the jury didn't. As I quote Mr. Shim, we'll never know. And the reported decisions on calculation of damages, the case law is pretty clear. Is it against the manifest way of the evidence? And if it isn't, we may disagree with it. And certainly Judge Christensen disagreed with it. She thought you should take this away. You should reduce this. I think this is a more fair result. Illinois Supreme Court made that clear as well in the Peach case. A judge may not take what he or she believes to be a more just result and substitute that in for a jury verdict. And if the jury verdict is not against the manifest way of the evidence, and here we have POS data that far exceeds the 1.3 million, the 1.5 million, the 800,000, 600,000, 400,000. And we could sit here and slice and dice those numbers. I get that. And I have my own theory as to how the jury might have thought this. But that's my point. It's my own theory as to how the jury might have thought this. I cannot, trial judge cannot, this court cannot invade the province of the jury. Thank you. Thank you, counsel. Thank you both for your arguments. We will take this case under advisement into a decision in due course. This court stands in recess until our next case. All rise.